Noah D. Lebowitz [SBN 194982]
Mark C. Peters [SBN 160611]
DUCKWORTH · PETERS · LEBOWITZ LLP
235 Montgomery Street, Suite 1010
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: noah@dplsf.com
          mark@dplsf.com

Attorneys for Plaintiff
RODNEY YOUNG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY YOUNG,<br><br>   Plaintiff,<br><br>v.<br><br>CITY OF NAPA,<br><br>   Defendants. | Case No. C 07-5228 BZ<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff Rodney Young ("Young" or "Plaintiff") is a resident of the State of California.

2. Defendant City of Napa ("Defendant" or "City of Napa") is a municipality within the State of California.

3. At all times all herein alleged, each defendant was an agent, employee or representative of the other defendants and ratified the conduct of the other defendants

## JURISDICTION & VENUE

4. Jurisdiction is based upon federal question, 28 U.S.C. § 1331. Under 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction over the state law claims asserted in this action.

5. Pursuant to 28 U.S.C. §§ 1391(a) and (b), venue is proper in the Northern District of California. The Defendant is located Napa, California, which is within this district. The events underlying the claims in this case took place within this district.

## INTRA-DISTRICT ASSIGNMENT

6. Pursuant to Civil Local Rule 3-2(d), this action should be assigned to the San Francisco or Oakland Division of the Court because events and omissions alleged herein which give rise to the claims for relief occurred in Napa County.

## FACTS COMMON TO ALL CLAIMS

7. Young was hired by the City of Napa as a maintenance crafts worker for the Building Department in July 1989. In approximately 1989 or 1990, Young became a Housing Services Specialist in the Napa Housing Authority. As a Housing Services Specialist, Young performed inspections of all rental landlord owned homes for County and City of Napa for housing quality standards, and maintained a 50-unit apartment complex owned by the Napa Housing Authority.

8. Through the end of 2005 Young had a clean employment record with the City of Napa, and had no instances of performance deficiencies or formal write ups.

9. Young has lived in Jackson, California for seven years. Without traffic it takes approximately 2.5 hours to drive from Napa to Jackson. For at least six years, Young had an agreement with the City of Napa to work an alternative schedule as follows: Monday through Thursday 7:00 a.m. to 6:00 p.m. Young would stay in an apartment in Napa from Monday night through Thursday, and travel back to Jackson on Thursday after work. With full knowledge and

approval of his employer, Young would start work on Thursdays at 6:00 a.m. and leave by 2:00 p.m., taking no lunch break and using accrued vacation time to account for the final two hours of his work week. If Young left after 2:00 p.m., the traffic on his route home would extend his commute to in excess of four hours.

10. Section 8 participating landlords received rent from public funds.

11. The public funds used to pay the landlords are derived from an annual budgetary grant from the U.S. Department of Housing and Urban Development ("HUD").

12. One of Young's duties as Housing Services Specialist was to sign his name to certify that the initial rental amount and any rent increase thereafter is justified.

13. In January 2006, Young was called into a meeting with Peter Dreier (Executive Director of the Napa Housing Authority) and Doris Smith (Housing Programs Coordinator of the Napa Housing Authority).

14. In that January 2006 meeting, Dreier and Smith told Young that they wanted him to approve a 4% blanket rent increase to all landlords providing Section 8 housing. They told Young that the agency had an $800,000 surplus of HUD funds. They told Young that if they did not spend the money, it would have to be returned to HUD. They also told Young that if they had to return the funds, that HUD would decrease the annual grant to Napa Housing Authority for the following fiscal year's budget.

15. Young refused to approve the rent increase. Young specifically told Dreier and Smith that he would not be part of any scheme designed to inflate their need for HUD funds. At the time, the Napa Housing Authority was already paying higher rents than the open market because the local rental market was in a slump. Young had previously advocated for rent decrease, but was told by Dreier to maintain the over-market rents.

16. Smith then told Young that she would be in charge of approving rent increases for the future. Soon after undertaking this job function, Smith approved a rent increase.

17. Young's relationship with Dreier and Smith was never the same after he refused to go along with their scheme to inflate rents.

- 3 -
FIRST AMENDED COMPLAINT

18. Beginning in June 2006, Dreier and Smith told Young that he would no longer be able to work on the alternative work schedule described in Paragraph 14 above. Instead, starting September 1, Young would be required to work five days per week, eight hours per day.

19. This change of schedule caused Young significant stress. As he explained to Dreier and Smith, the new schedule would restrict the time he was available to be with his family in Jackson. Moreover, not allowing him to leave mid-afternoon on his final work day would cause him significant stress and harm because of the extraordinary commute time he would now encounter.

20. Young also told Dreier and Smith that he felt that the change in schedule was retaliation for his objecting to their scheme to inflate their need for HUD budget monies.

21. As the September 1 date approached, Young's stress became so severe that he consulted with his physician who told Young that his blood pressure had elevated to very harmful levels. Young's physician then advised him to take a medical leave of absence from work.

22. On Thursday, August 30, Young filled out a City of Napa Departmental Leave Request, listing himself as "S-3" (Sick Leave over 3 days) with a start date of 8/30/06 and with an unknown end date. Young left the form in Smith's in basket.

23. On Friday, September 1, Dreier wrote Young a letter regarding his medical leave of absence. In that letter, Dreier stated that Young's leave had been approved for August 30 and September 1. However, if Young wanted additional time off, he would have to comply with City of Napa Civil Service Rule 9A. In that letter, Dreier gave Young a deadline of September 8 to provide a physician's note.

24. Nowhere in Dreier's September 1 letter did he provide Young with notice of his rights under the Family Medical Leave Act ("FMLA") or California Family Rights Act ("CFRA").

25. Nowhere in Dreier's September 1 letter did he inform Young as to what information from his physician would be required to secure his leave of absence.

26. In response to Dreier's September 1 letter, Young went to see his physician at the first available time. Monday September 4 was a holiday (Labor Day), so the first opportunity Young had to call his physician was Tuesday, September 5. At that time, Young secured an appointment for the next day.

27. On Wednesday, September 6, Young met with his physician. On that same date, Young's physician filled out a form stating that Young was "unable to perform usual duties" from September 5 through December 5, 2006. Young immediately sent the physician's note to his union representative who hand delivered the note to the Napa Housing Authority, which stamped the note "received" on September 7.

28. On September 7, Dreier filled out a City of Napa Personnel Action Form in regard to Young. On Section 5 "REASON FOR ACTION", Dreier wrote: "Sick Leave over 3 Days. See Attached Doctors Statement." On Section 7 "LEAVE JUSTIFICATION", Dreier checked the box "Medical Leave" and wrote in the dates 9/4/06 – 12/5/06 in the space after "anticipated duration". Dreier then checked the box "Sick Leave (OVER 3 DAYS)" , leaving unchecked both the box for "Family Sick Leave (state relationship) and for "Family & Medical Care Leave (state purpose)." This form was signed by Dreier on September 7, approved by the City Auditor on September 18, the Personnel Director on September 19, and the City Manager on September 26.

29. On Friday, September 8, Dreier wrote Young another letter. In this letter Dreier stated that the Housing Authority was requesting that Young's physician fill out an additional form aimed at determining whether or not Young could participate in a temporary Modified Work Program.

30. Nowhere in Dreier's September 8 letter to Young did he provide Young with notice of his rights under the FMLA or CFRA.

31. Nowhere in Dreier's September 8 letter to Young did he state that the City of Napa distrusted or had grounds to question the September 6 certification from Young's physician.

235 Montgomery Street, Suite 1010
San Francisco, CA 94104
415-433-0333    415-449-6556 (Fax)

32. On that same date, Dreier wrote directly to Young's physician, Sean Kaer MD. In that letter, Dreier stated "You have indicated that Mr. Young *may* not perform his usual job duties from September 5, 2006 until December 5, 2006." (emphasis added).

33. Nowhere in Dreier's September 8 letter to Dr. Kaer did he explain how he interpreted Dr. Kaer's note to include the word "may".

34. Dreier further stated in his September 8 letter to Dr. Kaer "If, in your opinion, Mr. Young is not able to perform any of the key job tasks at this time we would appreciate your confirmation of that opinion."

35. Nowhere in Dreier's September 8 letter to Dr. Kaer did he explain any basis for the need of such "confirmation".

36. Nowhere in Dreier's September 8 letter to Dr. Kaer did he state that the City of Napa distrusted or had grounds to question Dr. Kear's September 6 certification that Young was "unable to perform usual duties."

37. After receiving the September 1 and September 8 letters from Dreier, Young sought advice from his union representative. Young's union representative advised Young that he had rights under the FMLA and that he should submit a request for family medical leave.

38. Based on the advice from his union representative, on September 18 Young submitted his first formal request for Family Medical Leave on a union-provided form entitled "Request for Medical Leave of Absence – NCEA Employees Only, City of Napa, California."

39. On September 18 form, Young checked the box "FAMILY AND MEDICAL CARE LEAVE (Requires 12 months of service with the City of Napa prior to leave).

40. On September 25, Dreier wrote another letter to Young. Dreier began that four page letter as follows:

> I am writing to inform you that your claim for sick leave under Civil Service Rule 9 is in dispute and is being denied at this time based on the overall facts and circumstances surrounding your claim to sick leave as well as your failure to provide the City with appropriate medical certification of work limitations.

- 6 -
FIRST AMENDED COMPLAINT

41. Nowhere in Dreier's September 25 letter to Young did he reference the FMLA or CFRA.

42. Nowhere in Dreier's September 25 letter to Young did he state any reasons why he disbelieved Dr. Kaer's certification that Young was "unable to perform usual duties."

43. Nowhere in Dreier's September 25 letter to Young did he indicate that the City of Napa wanted to get a second opinion as to Young's ability to perform his usual duties.

44. In his September 25 letter, Dreier stated "it appears that you are not sick."

45. In his September 25 letter, Dreier further stated: "the City will not be paying you sick leave beyond September 1, 2006. Instead, the City has allowed you to use your accrued vacation and will allow you to utilize accrued vacation through September 30, 2006."

46. In his September 25 letter, Dreier also stated: "in the event you do not return to work as directed on Monday, October 2, 2006, you will be considered absent without authorization and the City will not authorize use of accrued vacation."

47. Finally, Dreier concluded his September 25 letter as follows: "I strongly encourage you to seek the advice of experienced experts in labor and employment law so that you do not make decisions regarding your employment which you will regret in the future."

48. In response to Dreier's September 25 letter, Young's union representative, Maria Advincula, spoke with Assistant City Manager Nancy Weiss. In that conversation, Ms. Weiss told Ms. Advincula that all that was needed for Young to preserve his job was further response from Dr. Kaer regarding Young's inability to work.

49. Based on Assistant City Mangaer Weiss' statement, Young procured an additional note from Dr. Kaer which read as follows:

> Mr. Young is currently incapacitated due to stress and neck pain related to cervical spine stenosis. He is unable to perform his usual and customary job duties. He is not able to perform the tasks listed in the document you sent to me on 9/8/06. Please see my earlier

>work restriction with times off recommended from 9/5/06 to 12/5/06.

This letter, dated September 29, was faxed directly to Ms. Weiss by Ms. Advincula.

50. On October 3, Young faxed yet another "Request for Medical Leave—NCEA Employee's Only, City of Napa, California" to the City of Napa. On this form, Young again checked the box "FAMILY AND MEDICAL CARE LEAVE (Requires 12 months of service with the City of Napa prior to leave). This time, Young checked the box "I wish to use accrued sick leave/vacation while on Family and Medical Care Leave." On top of the form, Young wrote "Amendment to Req. 9/18/06."

51. On October 4, Dreier filled out another City of Napa Personnel Action Form. Under Section 5 "REASON FOR ACTION", Dreier wrote: "Revise PAF dated 9/4/06 [sic] changing status from sick leave to vacation Re letter dated 9/25/06." Dreier then checked the box "Other (specify)" under Section 7 "LEAVE JUSTIFICATION", after which he wrote "Vacation Leave 9/4/06-9/30/06." This form was signed by Dreier, the City Auditor, the Personnel Director, and the City Manager on October 4.

52. On October 4, Dreier also filled out an additional City of Napa Personnel Action Form. Under Section 5 "REASON FOR ACTION", Dreier wrote: "Extend vacation leave from 10/1/06 –10/15/06." Dreier then checked the box "Other (explain)" under Section 6 "IF APPOINTMENT, CHECK ONE", after which he wrote "Vacation leave 10/1-10/15/06. This form was signed by Dreier on October 4, the City Auditor on October 11, the City Manager on October 12, and the Personnel Director on October 18.

53. On October 12, Dreier wrote a letter to Young. In that letter, Dreier acknowledged receiving (a) the September 29 letter from Dr. Kaer, and (b) the October 3 amended Request for Medical Leave of Absence. Dreier then wrote:

>Nothing which you or your doctor have submitted to the City thus far causes me to change my prior determination that, based on the overall facts and circumstances set forth in my September 25, 2006 letter, you are

- 8 -
FIRST AMENDED COMPLAINT

not unable to work due to sickness or illness, but are willfully failing and
refusing to report to work without good reason.

54. In his October 12 letter to Young, Dreier stated: "if you do not report to work on October 16, 2006, you will be considered to have voluntarily resigned your employment."

55. On October 16, Dr. Kaer completed a form entitled "City of Napa Certification of Health Care Provider." On that form, Dr. Kaer reconfirmed that Young had a "Serious Health Condition" under categories "(2)" and "(4)" on the form. Dr. Kaer also confirmed that the duration of the condition to be "9/5/06 – 12/5/06". Finally, Dr. Kaer checked the box "No" in response to the question: "If medical leave is required for the employee's absence from work because of the employee's own condition . . . is the employee able to perform work of any kind?" This form was submitted to the City of Napa on behalf of Young. The City of Napa confirmed receipt of this form in a telephone conversation between Valerie Ruxton in the personnel department, and Advincula.

56. Young did not return to work on October 16.

57. On October 19, 2006, Dreier wrote a letter to Young in which Dreier informed Young that the City of Napa considered Young to have voluntarily resigned his employment effective 5 p.m. on October 16.

58. On October 19, Young wrote a letter to Dreier stating that he wished to appeal the decision of voluntary resignation. That letter was delivered to the City of Napa on behalf of Young.

59. On October 31, Young had a meeting in Acting City Manager Patricia Thompson's office during which he appealed his so-called voluntary resignation.

60. On November 21, Thompson sent Young a letter denying Young's appeal.

///
///
///
///
///

- 9 -
FIRST AMENDED COMPLAINT

## FIRST CLAIM
### VIOLATION OF FAMILY MEDICAL LEAVE ACT
(29 U.S.C. § 2615 *et seq.*)

61. Plaintiff incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. At all times relevant to this complaint, 29 U.S.C. § 2615 *et seq.*, otherwise known as the Family Medical Leave Act ("FMLA") and its implementing regulations were in full force and effect.

63. At all times relevant to this complaint, the City of Napa was a covered employer under the FMLA.

64. At the time Young requested his medical leave, he was an eligible employee as defined by the FMLA, in that he had been employed by the City of Napa for more than one year and had worked in excess of 1,250 hours in the previous year.

65. At the time Young requested his medical leave, he provided sufficient medical certification to qualify for leave under the FMLA.

66. The Defendant violated the FMLA by failing to provide Young with sufficient notice of his rights under the FMLA, as set forth in 29 CFR § 825.300.

67. The Defendant violated the FMLA by failing to follow the processes for seeking additional medical certification, as set forth in 29 CFR § 825.307.

68. The Defendant violated the FMLA by *inter alia* failing to grant Young the medical leave he requested and terminating him for failing to return to work during the time he should have been granted FMLA leave.

69. The Defendant also violated the FMLA by requiring Young to exhaust his accrued vacation time and denying him the right to use his accrued sick time while out on leave.

70. The Defendant's actions, as set forth above, also constitute unlawful interference with Young's FMLA rights.

71. As a direct and proximate result of the Defendants' wrongful conduct, Young has suffered damages including, but not limited to, a loss of income and benefits.

72. Young is also entitled to an award of liquidated damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CLAIM
VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT
(California Government Code § 12945.1 *et seq.*)

73. Plaintiff incorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74. At all times relevant to this complaint, California Government Code § 12945.1 *et seq.*, otherwise known as the California Family Rights Act ("CFRA") and its implementing regulations were in full force and effect. Under the CFRA, it is unlawful for a covered employer to fail to grant an eligible employee the full amount of leave as certified by that employee's physician. Under CFRA it is unlawful for a covered employer to discriminate against an eligible employee for taking a leave for a serious health condition or to interfere with the exercise of rights under the CFRA.

75. On August 3, 2007, Young filed his administrative complaint of discrimination with the California Department of Fair Employment and Housing ("DFEH"). On August 8, 2007, the DFEH issued Young his Notice of Case Closure and Right-To-Sue Notice. Young subsequently served his complaint and Right-To-Sue Notice on the City of Napa by certified mail, which was received by the City of Napa on September 4, 2007. Accordingly, Young has exhausted his administrative remedies under the CFRA and complied with his service obligations under Government Code § 12965(b).

76. At all times relevant to this complaint, the City of Napa was a covered employer under the CFRA.

77. At the time Young requested his medical leave, he was an eligible employee as defined by the CFRA, in that he had been employed by the City of Napa for more than one year and had worked in excess of 1,250 hours in the previous year.

78. At the time Young requested his medical leave, he provided sufficient medical certification to qualify for leave under the CFRA.

- 11 -
FIRST AMENDED COMPLAINT

79. The Defendant violated the CFRA by failing to provide Young with sufficient notice of his rights under the CFRA, as set forth in 2 CCR § 7297.4(b)(2).

80. The Defendant violated the CFRA by failing to follow the processes for seeking additional medical certification, as set forth in 2 CCR § 7297(b)(2)(A).

81. The Defendant violated the CFRA by *inter alia* failing to grant Young the medical leave he requested and terminating him for failing to return to work during the time he should have been granted CFRA leave.

82. The Defendant also violated the CFRA by requiring Young to exhaust his accrued vacation time and denying him the right to use his accrued sick time while out on leave.

83. The Defendant's actions, as set forth above, also constitute unlawful interference with Young's CFRA rights.

84. As a direct and proximate result of the Defendant's wrongful conduct, Young has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### **THIRD CLAIM**
FAILURE TO PAY EARNED VACATION PAY UPON DISCHARGE
(California Labor Code § 227.3)

85. Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through 84, as though fully set forth herein.

86. Pursuant to California Labor Code § 227.3, the City of Napa was required to pay Young all accrued vacation upon his employment termination.

87. In violation of Labor Code § 227.3, the City of Napa failed to pay Young for all his accrued vacation time because the Defendants had depleted such accrued vacation time against Young's wishes and in violation of law, as set forth above.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

- 12 -

FIRST AMENDED COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For liquidated damages pursuant to 29 U.S.C. § 2617(a)(iii);
4. For costs of suit, including reasonable expert witness costs;
5. For reasonable attorneys fees pursuant to 29 U.S.C. § 2617(a)(3), California Government Code § 12965(b), and California Code of Civil Procedure § 1021.5;
6. For interest at the maximum legal rate on all sums awarded; and
7. For such other relief as the Court deems just and proper.

Dated:  November 6, 2007                    DUCKWORTH · PETERS · LEBOWITZ LLP


By:_____/s/_____,
         Noah D. Lebowitz
Attorneys for Plaintiff Rodney Young


**DEMAND FOR JURY TRIAL**

Plaintiff Rodney Young hereby demands a trial by jury on all claims.


Dated:  November 6, 2007                    DUCKWORTH · PETERS · LEBOWITZ LLP


By:_____/s/_____,
         Noah D. Lebowitz
Attorneys for Plaintiff Rodney Young